United States District Court
Southern District of Texas
**ENTERED**
April 13, 2021
Nathan Ochsner, Clerk



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| 6.584 ACRES OF LAND, more or | § | CIVIL ACTION NO. 7:20-cv-00244 |
| less, HIDALGO COUNTY, TEXAS; ELOISA | § | |
| ROSA CAVAZOS; et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## OPINION AND ORDER

The Court now considers Defendant-Intervenor Jose Alfredo ("Fred") Cavazos's "Motion to Intervene as Defendant"[1] and the answers and defenses filed by Defendant-Intervenor Jose Alfredo ("Fred") Cavazos and Defendant Eloisa Cavazos,[2] the United States' response and motion to strike,[3] and Defendants' reply.[4] The Court also considers the United States' motion for leave to file a proposed order.[5] The Court further considers the United States' motion for immediate possession[6] and Defendants' response.[7]

As a preliminary matter, the Court first turns to the United's motion for leave.[8] Therein, the United States provides that it inadvertently filed its response[9] without a proposed order.[10] In

---

[1] Dkt. No. 21.
[2] Dkt. No. 22.
[3] Dkt. No. 36.
[4] Dkt. No. 37.
[5] Dkt. No. 38.
[6] Dkt. No. 47.
[7] Dkt. No. 52.
[8] *Id.*
[9] Dkt. No. 36.
[10] Dkt. No. 38 at 1, ¶ 1.

order to comply with Local Rule 7.4, the United States seeks leave to file the proposed order.[11] .

"The court should freely give leave [to amend] when justified."[12] In light of this and the requirements of Local Rule 7.4, the Court **GRANTS** the United States' motion for leave to file its proposed order,[13] which has already been filed with the Court under Docket Number 38-1.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This is a land condemnation case commenced by the United States under the Declaration of Taking Act[14] on August 27, 2020.[15] On that date, the United States filed a complaint[16] and Declaration of Taking[17] seeking the "taking of property under the power of eminent domain" of Tract RGV-MCS-2119, 6.584 acres of land located along the United States-Mexico border, more specifically described in Schedule C.[18] The United States further lists as authority for the taking: 40 U.S.C. §§ 3113 and 3114, as well as, "the Act of Congress approved September 30, 1996, as Public Law 104-208, Division C, Section 102, 110 Stat. 3008-546, 3009-554-55, as amended and codified at 8 U.S.C. § 1103(b) & note;" and "the Act of Congress approved March 23, 2018, as Public Law 115-141, div. F, tit. II, Section 230."[19] The United States further describes the public purpose for which said property is taken is "to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the Unite States/Mexico border within the State of Texas."[20] The United States seeks to take the land in fee simple absolute subject to certain exceptions.[21] On September 4, 2020, the

---

[11] *Id.*, ¶ 1–3.
[12] Fed. R. Civ. P. 15(2).
[13] *Id.*
[14] *See* 40 U.S.C. §§ 3111–18.
[15] Dkt. No. 1.
[16] *Id.*
[17] Dkt. No. 2.
[18] Dkt. No. 1-1 at 6–9.
[19] *Id.* at 2.
[20] *Id.*at 4.
[21] *Id.* at 18.

United States deposited $347,887.00, estimated just compensation for the taking, in the Court's Registry.[22]

On September 21, 2020, Defendant Eloisa Cavazos appeared via counsel and filed her answer and the instant motion to dismiss.[23] Also on that date, Defendant-Intervenor Jose Alfredo ("Fred") Cavazos, via counsel, filed his motion to intervene, answer, and motion to dismiss.[24] The United States did not respond to Defendant-Intervenors motion to intervene, but timely[25] filed its response to Defendant and Defendant-Intervenor's motions to dismiss.[26] Defendant and Defendant-Intervenor subsequently file their joint reply.[27] The Court turns to its analysis.

## II.   JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331.

## III. MOTION TO INTERVENE

The Court first turns to Defendant-Intervenor Jose Alfredo ("Fred") Cavazos's motion to intervene and brief in support.[28] The United States has not filed a response and the time for doing so has passed, rendering Defendant-Intervenor's motion unopposed by operation of this Court's Local Rule.[29]

### a.  Legal Standard

Federal Rule of Civil Procedure (Rule) 71.1 outlines the specific procedures for condemnation actions.[30] Where the rule is silent, the other rules of Civil Procedure apply.[31] As Rule 71.1 is silent as to interventions, the traditional intervention standard, Federal Rule of Civil

---

[22] Dkt. No. 10.
[23] Dkt. No. 22.
[24] Dkt. No. 21.
[25] *See* LR7.4.A.
[26] Dkt. Nos. 36.
[27] Dkt. No. 37.
[28] Dkt. No. 21; 21-4.
[29] LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition.").
[30] Fed. R. Civ. P. 71.1(a).
[31] *Id.*

Procedure 24, applies.[32] Rule 24 provides two pathways for intervention: intervention of right under 24(a) and permissive intervention under 24(b). To intervene as of right, the proponent must satisfy a four-prong test:

> (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[33]

In assessing timeliness, the Court looks to: (1) the amount of time between the intervenor's discovery of the action and when he moved to intervene, (2) prejudice to existing parties if the motion is granted, (3) prejudice to the intervenor if the motion is denied, and (4) the existence of unusual circumstances.[34]

In evaluating an intervenor's interest, "the Fifth Circuit has warned against defining 'property or transaction' too narrowly."[35] "There is not any clear definition of the nature of the 'interest ...' that is required for intervention of right."[36] A key inquiry is whether the interest is "legally protectable."[37] "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim."[38]

Intervention of right also requires that the intervenor be so situated that the disposition of the action without his inclusion would practically impair or impede his ability to protect this

---

[32] *Id.*, & Fed. R. Civ. P. 24.

[33] *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016); Fed. R. Civ. P. 24(a).

[34] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).

[35] *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)).

[36] *Wal–Mart*, 834 F.3d at 566 (citing 7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1908.1 (3d ed. 2007).

[37] *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984).

[38] *Wal–Mart*, 834 F.3d at 566 (citing *Texas*, 805 F.3d at 659).

interest and that, without intervention, representation of that interest would be inadequate.[39] This burden is minimal—the intervenor need only show that representation of his interests without intervention "*may* be inadequate."[40] Fifth Circuit jurisprudence "imposes two presumptions of adequate representation, when the would-be intervenor has the same ultimate objective as a party to the lawsuit and when the putative representative is a governmental body or officer charged by law with representing the interests of the intervenor."[41]

If a proponent does not qualify to intervene as of right, he may still intervene with permission of the Court under Rule 24(b), which allows the Court to permit intervention by anyone who has "a claim or defense that shares with the main action a common question of law or fact."[42] "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed."[43] "Federal courts should allow intervention when no one would be hurt and the greater justice could be attained."

The Court now turns to its analysis of Defendant-Intervenor Jose Alfredo Cavazos's motion to intervene.[44]

### b.  Analysis

In Defendant-Intervenor's motion to intervene, he argues that he is entitled to intervene as a matter of right under Rule 24(a)(2) and, alternatively, that he should be permitted to intervene under Rule 24(b)(1)(B).[45] The Court analyzes each basis for intervention.

---

[39] *Id.* at 565.
[40] *Id.* at 569 (citing *Texas*, 805 F.3d at 662).
[41] *Id.* (citing Texas, 805 F.3d at 661–62 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996))) (internal quotations omitted).
[42] Fed. R. Civ. P. 24(b)(1)(B).
[43] *Texas*, 805 F.3d at 656.
[44] Dkt. No. 21.
[45] Dkt. No. 21 at 1.

To intervene as of right, Defendant-Intervenor must demonstrate that: (1) his application is timely; (2) he has have an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) his interest is inadequately represented by the existing parties to the suit.[46]

Defendant-Intervenor asserts that "[a]s a habitual user of his family's land, [he] has an important interest relating to the property that is the subject of the condemnation."[47] He further argues that he has a "'direct, substantial, legally protectable interest' in not being 'excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity . . . conducted by any Executive agency."[48] In reviewing Defendant-Intervenor's motion, the Court notes that he does not assert that he had legal title to his family's riverside property or the Subject Property at the time of the taking. Rather, Defendant-Intervenor alleges that the United States plan for the development of the Subject Property will impede his ability to access his family's land between the Subject Property and the Rio Grande River[49] ("riverside property").[50] In support of this argument, he provides that the Subject Property contains the "sole accessible route" to his family's riverside property to which he requires regular access to "tend cattle and goats, manage tenant properties, and participate in the family's livelihood."[51] He also argues that "[a]ll Executive agencies, including DHS, are prohibited from discriminating against persons with disabilities,"[52] and that federal regulations require that "[t]he planned border wall program structures 'shall be designed, constructed, or altered so as to be

---

[46] *See Wal–Mart*, *supra* note 33.
[47] Dkt. No. 21-4 at 6.
[48] *Id.*, ¶ 8 (citing 29 U.S.C. § 794; Decl. ¶ ¶ 12-15; 18-19).
[49] Dkt. No. 1-1 at 16.
[50] Dkt. No. 21-4 at 9, ¶ 10–12.
[51] *Id.* at 1 & 9, ¶ 1 & 10.
[52] *Id.* at 6, ¶ 8 (citing 29 U.S.C. § 794; *Prewitt v. U.S. PostalServ.,* 662 F.2d 292 (5th Cir. 1981)).

readily accessible to and usable by individuals with a disability.'[53] Based on Defendant-Intervenor's characterization of his interest in this case, it appears to the Court that Defendant-Intervenor is attempting to intervene on the basis of a counterclaim against the United States for an alleged violation of the Rehabilitation Act.

Land condemnation actions under the Declaration of Taking Act (DOTA) are unique and there are strict limits on the interests that may be protected in such actions. For example, district courts lack jurisdiction to hear counterclaims against the United States in condemnation cases.[54] Furthermore, outside of the determination of title and just compensation, "[i]t has been long established that the role of the district court in DOTA condemnations is limited to a bare consideration of the legal authority to take, and . . .courts have been careful to refrain from considering matters of propriety, expediency and policy with regard to the use of the property sought . . . ."[55] Though the Court may determine whether there is a valid public purpose, the Court's "ability to analyze a taking's 'purpose' is limited to 'the sense of the overall project rather than in the sense of some minor part of the project.'"[56] Additionally, while a defendant "may challenge the validity of a taking for departure from the statutory limits [of the empowering statute]," [57] noncompliance with a separate federal statute is not a valid defense to the condemnation action unless expressly stated by Congress.[58] So, here, the Department of Homeland Security's alleged non-compliance with the Rehabilitation Act and Code of Federal

---

[53] *Id.* (citing 6 C.F.R. § 15.51).

[54] *United States v. Certain Land Situated in City of Detroit*, 361 F.3d 305, 308 (6th Cir. 2004) (citing *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 380 (4th Cir.1995)).

[55] *United States v. 162.20 Acres of Land, More or Less, Situated in Clay Cnty.*, 639 F.2d 299, 304 (5th Cir. 1981).

[56] *1.16 Acres*, 585 F. Supp. 2d at 906 (quoting *United States v. 2,606.84 Acres of Land in Tarrant Cty.*, 432 F.2d 1286, 1289–90 (5th Cir. 1970) ("It is perfectly clear that the judicial role in examining condemnation cases does not extend to determining whether the land sought is actually necessary for the operation of the project.")).

[57] *Id.* (citing *Catlin v. United States*, 324 U.S. 229, 240 (1944); *Berman v. Parker*, 348 U.S. 26, 35 (1954); *Maiatico v. United States*, 302 F.2d 880, 886 (D.C.Cir.1962)).

[58] *Id.*; *see United States v. 178.15 Acres of Land, More or Less, Grayson County Virginia,* 543 F.2d 1391 (4 Cir. 1976).

Regulations in its designs for the fencing on the condemned land is neutral vis-à-vis the filing of the declaration and vesting of title in the United States.[59]

In light of this, the Court does not find that Defendant-Intervenor has a legally protectable interest in this action. First, intervention on the basis of a counterclaim is not allowable in land condemnation cases such as this one.[60] Furthermore, even if the Court found Defendant-Intervenor had a legally protectable interest, the Court does not find that excluding him from this action would substantially impede or impair his ability to protect that interest. Defendants' interest in this case appears to primarily relate to the size of the gate installed in the proposed fencing to be built on the Subject Property.[61] The Court finds this to be a minor part of the project outside the scope of the Court's jurisdiction in these cases.[62] Thus, as the Court cannot make a determination on this issue, Defendant-Intervenor's exclusion from this case will have no effect on his ability to protect that interest—because he could not protect it even as a party to this case.

Furthermore, insofar as this interest is protectable in this case, because the income derived from Defendant-Intervenor's activities on the riverside land goes to his sister Defendant Eloisa Cavazos[63] and both she and Defendant-Intervenor filed nearly identical motions to dismiss with the Court,[64] the Court finds that Defendant Eloisa Cavazos has the same ultimate objective as Defendant-Intervenor. Thus, raising a presumption that she will adequately represent his interests in the litigation.[65] In an attempt to overcome this presumption, Defendant-Intervenor argues that he is the only individual qualified to bring a claim against the United States under the

---

[59] *162.20 Acres*, 639 F.2d at 304.
[60] *See United States v. Certain Land Situated in City of Detroit,* 361 F.3d 305, 308 (6th Cir. 2004).
[61] Dkt. No. 21-4 at 9–10, ¶¶ 10–12.
[62] *See 1.16 Acres*, *supra* note 56.
[63] *Id.*, ¶ 9.
[64] Dkt. No. 21 & 22.
[65] *See Wal–Mart*, *supra* note 41.

Rehabilitation Act in relation to the fencing being built on the Subject Property.[66] However, as counterclaims are not permitted in land condemnation actions under DOTA for both Defendants and Intervenors,[67] this detail is irrelevant. Thus, the Court further finds that Defendant-Intervenor failed to overcome the presumption that his interests are adequately represented in this action.

For these reasons, the Court does not find that Defendant-Intervenor qualifies for intervention as of right. Furthermore, because the Defendant-Intervenor's interests are adequately represented by in this suit and he does not raise any defenses not raised by Defendant Eloisa Cavazos,[68] the Court does not find permissive intervention warranted. Accordingly, the Court **DENIES** Jose Alfredo ("Fred") Cavazos's Motion to Intervene.[69]

## IV.   DEFENDANT'S DEFENSES AND OBJECTIONS AND THE UNITED STATES' MOTION TO STRIKE

The Court now turns to consider Defendant Eloisa Cavazos's "Answer and Defenses under Rule 12(b) and Affirmative Defenses and, in the alternative, Motion for a More Definite Statement,"[70] the United States' response and motion to strike,[71] and Defendant's reply.[72]

### a.   Legal Standard

Federal Rule of Civil Procedure 71.1(e)(2)(C) permits a defendant to file an answer that states all of the defendant's "objections and defenses to the taking." Furthermore, "[a]t any time before compensation has been determined and paid, the court may, after a motion and hearing, dismiss the action as to a piece of property."[73] The Supreme Court of the United States has preserved a landowner's "preexisting right to question the validity of the taking as not being for a

---

[66] Dkt. No. 21-4 at 11, ¶ 15.
[67] *See Detroit*, *supra* note 54.
[68] *Compare* Dkt. No. 21 & Dkt. No. 22.
[69] Dkt. No. 21.
[70] Dkt. No. 22.
[71] Dkt. No. 36.
[72] Dkt. No. 37.
[73] FED. R. CIV. P. 71.1(i)(1)(C).

purpose authorized by the statute under which the main proceeding is brought,"[74] and the Court has jurisdiction to determine whether Congress did not authorize a particular taking and dismiss such unauthorized action accordingly.[75] "The court may [inquire] whether the authorized officials were acting in bad faith or arbitrarily or capriciously by condemning given land."[76]

Furthermore, under Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." "[A]lthough motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law."[77]

**b. Analysis**

*1. The United States Motion to Strike*

As a preliminary matter, the Court first turns to the United States' argument that "the landowner's motion to dismiss is improper."[78] In support of this, the United States argues that "Rule 71.1(e)(2) does not permit a landowner to move to dismiss a land condemnation action."[79] The applicable rule provides in relevant part: "A defendant waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed."[80] Here, Defendants filed their objections and defenses/motion to dismiss[81] in conjunction with their answer, not as an additional motion or pleading asserting additional

---

[74] *Catlin v. United States*, 324 U.S. 229, 241 (1945).

[75] *United States v. 162.20 Acres of Land, more or less, in Clay Cnty.*, 639 F.2d 299, 303 (5th Cir. 1981) (quotation omitted) ("It is clear that a condemnee may challenge the validity of the taking for departure from the statutory limits."); *see United States v. 2,606.84 Acres of Land in Tarrant Cnty.*, 432 F.2d 1286, 1290 (5th Cir. 1970) ("[W]e think that if Congress had never authorized a dam on the Clear Fork of the Trinity River, then the landowner might here claim under the Catlin rule that his land was being taken for an unauthorized purpose.").

[76] *United States v. 101.88 Acres of Land, more or less, in St. Mary Par.*, 616 F.2d 762, 767 (5th Cir. 1980).

[77] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

[78] Dkt. No. 36 at 6.

[79] *Id.*, ¶ 11.

[80] Fed. R. Civ. P. 71.1(e)(3).

[81] Defendant's filing is entitled "Answer and Defenses . . . ;" however, both the United States and Defendant refer to it in their response and reply as a "motion to dismiss." *See* Dkt. Nos. 22; 36; 37.

objections or defenses.[82] Furthermore, as this Court has previously held, when a Defendant in a land condemnation action files an additional motion to dismiss that merely asserts or elaborates upon the objections and defenses asserted in the answer, that motion does not constitute an "additional objection or defense" that would be disallowed under Rule 71.1(e).[83] Thus, the Court rejects the United States' interpretation of Rule 71.1(e). Accordingly, the Court finds Defendant's objections and defenses/motion[84] to dismiss properly before the Court.

The United States further argues that because it has already taken title to the Subject Property under the Declaration of Taking Act, dismissal is precluded under 71.1(i)(1)(C).[85] However, as this Court previously held, this rule, read as a whole, means that the Court may dismiss an action before ordering possession or establishing just compensation, but, in doing so, must award compensation for the landowner's deprivation of legal title once the United States accomplishes the taking by (1) filing the declaration and (2) depositing the estimated just compensation in the Court's registry.[86] That is to say, the Court must "award compensation for any deprivation of title, temporary or permanent,[87] but may also, pursuant to Rule 71.1(i)(1)(C), "dismiss the action as to a piece of property."[88] On this basis, the Court now reiterates its previous holding[89] and rejects the United States' interpretation of 71.1(i)(1)(C).

---

[82] *See* Dkt. No. 22.
[83] *United States v. 4.587 Acres of Land, more or less, in Starr Cnty.*, No. 7:20-cv-00425, 2021 WL 733770, 2021 U.S. Dist. LEXIS 35004 (S.D. Tex. Feb. 25, 2021), Dkt. No. 70 at 4 (citing *Vill. of Wheeling v. Fragassi*, No. 09 C 3124, 2010 WL 3087462, at *3 (N.D. Ill. Aug. 2, 2010) ("The Court first notes that Rule 71.1(e)(3) bars motions 'asserting an *additional* objection or defense.' In the present case, the [defendant's] motion only raises defenses that were contained in its answer.")).
[84] Dkt. No. 22.
[85] Dkt. No. 36 at 6, ¶ 12.
[86] *4.587 Acres*, No. 7:20-cv-00425, 2021 WL 733770, 2021 U.S. Dist. LEXIS 35004, Dkt. No. 70 at 6.
[87] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 12 n.18 (1984) ("The Rule [71.1] does not suggest that a court order dismissing a suit has the effect of nullifying a taking that has already occurred. Indeed, to the contrary, the Rule forbids the district court to dismiss an action (without awarding just compensation) if the Government has acquired any 'interest' in the property.").
[88] *4.587 Acres*, No. 7:20-cv-00425, 2021 WL 733770, 2021 U.S. Dist. LEXIS 35004, Dkt. No. 70 at 6 ("The Court must not interpret Rule 71.1 to reach the absurd conclusion that landowners may not challenge or seek dismissal of even unauthorized takings,[88] and will interpret Rule 71.1 consistently with the Supreme Court's admonishment that

The United States further argues that Defendant's objections and defenses/motion to dismiss are improper because "the sole defense which may be raised against the condemnation itself is that of lack of authority to take in the petitioner."[90] However, again, the United States' argument proves too much. "Landowners have the right to question whether, and the court has jurisdiction to hear claims, that a taking was invalid as not being for a purpose authorized by the statute under which the proceeding is sought"[91] because Congress determines what land may be taken with important limitations.[92] The Declaration of Taking Act itself "does not bestow independant [sic] authority to condemn lands for public use. On the contrary, it provides a proceeding 'ancillary or incidental to suits brought under other statutes,'"[93] and the Act "could

---

property owners may challenge a taking for departing from statutory limits.") (citing *United States v. Solis-Campozano*, 312 F.3d 164, 166 (5th Cir. 2002) ("No authority need be cited for the rule that such plain meaning [of a statute, regulation, or rule] controls, unless it leads to an absurd result."); *Maiatico v. United States*, 302 F.2d 880, 886 (D.C. Cir. 1962) (quoting *Catlin v. United States*, 324 U.S. 229, 240 (1945)) (footnotes omitted) ("[I]t is not for us to determine whether or not a particular project be desirable. That is within the power of the Congress, however, subject to the right of the owners 'to challenge the validity of the taking for departure from the statutory limits.'"), *cited in United States v. 162.20 Acres of Land, more or less, in Clay Cnty.*, 639 F.2d 299, 303 (5th Cir. 1981); *see Higginson v. United States*, 384 F.2d 504, 507 (6th Cir. 1967) (holding that vesting of title under the Declaration of Takings Act is "subject to a right of the former land owner to challenge the taking as not being for the prescribed statutory purpose")).

[89] *4.587 Acres*, No. 7:20-cv-00425, 2021 WL 733770, 2021 U.S. Dist. LEXIS 35004, Dkt. No. 70 at 6–8.

[90] Dkt. No. 36 at 5, ¶ 9.

[91] *United States v. 1.16 Acres of Land, more or less, in Cameron Cnty.*, 585 F. Supp. 2d 901, 905–06 (S.D. Tex. 2008) (Hanen, J.) (citing *Catlin v. United States*, 324 U.S. 229, 240 (1945)); *see United States v. 2,606.84 Acres of Land in Tarrant Cnty.*, 432 F.2d 1286, 1290 (5th Cir. 1970) ("[A] landowner has a right to question the validity of a taking as not being for a purpose authorized by the statute under which the proceeding is brought."); *United States v. 58.16 Acres of Land, more or less, in Clinton Cnty.*, 478 F.2d 1055, 1059–60 (7th Cir. 1973) ("Thus the rule contemplates that the court in which the condemnation proceeding is filed shall ordinarily, in advance of determining just compensation, decide whether the governmental agency was authorized to take the lands sought to be condemned. . . . There can be no doubt in our minds that the landowners under these circumstances were entitled to a hearing on their objections to the taking prior to their being required to vacate their homestead and that the hearing need not or should not have been deferred until a determination of just compensation. The fifth amendment's mandate . . . required no less."); *U.S. Dep't of Interior v. 16.03 Acres of Land, more or less, in Rutland Cnty.*, 26 F.3d 349, 355 (2d Cir. 1994) (holding that "case law preponderates in favor of subjecting condemnation decisions to judicial review" and requiring an "ultra vires" standard of review); *United States v. 2,974.49 Acres of Land, more or less, in Clarendon Cnty.*, 308 F.2d 641, 643 (4th Cir. 1962) (emphasis added) ("*Once it had determined that the condemnation was authorized by statute and that the statutory requirements had been complied with*[,] the court was without power to dismiss the condemnation proceedings and Declaration of Taking.").

[92] *2,953.15 Acres of Land, more or less, in Russell Cnty. v. United States*, 350 F.2d 356, 359 (5th Cir. 1965) ("The exercise of the power of eminent domain is vested in the legislative branch of the Government. The power may be exercised directly or may be delegated to be exercised in any manner the Congress sees fit as long as constitutional restraints are not violated.").

[93] *United States v. 162.20 Acres of Land, more or less, in Clay Cnty.*, 639 F.2d 299, 303 (5th Cir. 1981) (quoting *United States v. Dow*, 357 U.S. 17, 23 (1958)).

not have been intended to whittle down the property owner's rights."[94] The Court may inquire "whether the authorized officials were acting in bad faith or arbitrarily or capriciously by condemning given land."[95] For these reasons, the Court finds that Defendant's defenses and objections raised in her answer are properly before the Court and that Defendant's motion is justiciable.[96] Accordingly, the Court will consider the objections and defenses before ruling on the United States' motion to strike. The Court now turns to consider Defendant's objections and defenses/motion to dismiss.[97]

### 2. Defendant's Objections and Defenses/Motion to Dismiss

As the United States has moved for immediate possession,[98] Defendant's motion to dismiss is now ripe.[99] The Court thus turns to consider each of Defendant's objections and defenses.[100]

### i. "Related Structures"

First, the Court considers Defendant's defense and objection that the United States exceeded the authority of the empowering statute. Specifically, Defendant argues that the United States exceeded its statutory authority by including the phrase "related structures" in the purpose for the taking of the Subject Property, because "'[r]elated structures' is undefined, and the government cannot condemn land without specifying the purpose (i.e., the "public use") of the taking.[101] However, while the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the empowering statute for the taking of the Subject Property, does not explicitly include "related structures" in its terms, it gives the Attorney General broad authority

---

[94] *Bishop v. United States*, 288 F.2d 525, 528 (5th Cir. 1961).
[95] *United States v. 101.88 Acres of Land, more or less, in St. Mary Par.*, 616 F.2d 762, 767 (5th Cir. 1980).
[96] *See 162.20 Acres*, 639 F.2d at 303 (holding that, in eminent domain cases brought under the Declaration of Taking Act, "the concept of justiciability limits judicial review to the bare issue of whether the limits of authority were exceeded").
[97] Dkt. No. 22.
[98] Dkt. No. 47.
[99] *See 4.587 Acres*, No. 7:20-cv-00425, 2021 WL 733770, 2021 U.S. Dist. LEXIS 35004, Dkt. No. 70 at 8.
[100] Dkt. No. 22.
[101] *Id.* at 12, ¶ 32 (citing Dkt. No. 1-1 at 4).

in condemning land "to control and guard the boundaries and borders of the United States."[102] It further allows the Secretary of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads . . . ."[103] The Court cannot interpret the statute so narrowly as to make "related structures" exceed the authority of the statute. Thus, the Court finds that the United States has not exceeded its statutory authority granted by 8 U.S.C. § 1103(b) by including "related structures" in its purpose for the taking of the Subject Property.

### ii. Arbitrary and Capricious

The Court now turns to Defendant's argument that the United States acted arbitrarily and capriciously in condemning the Subject Property. Defendant argues that the taking is arbitrary and capricious and in bad faith because (1) the United States failed to allege that it followed the appropriate appraisal process in arriving at its estimate for just compensation; (2) it violates the Rehabilitation Act; (3) it violates U.S. Treaty Obligations; and (4) it discriminates against the Cavazos because of their opposition to the border wall.[104]

In considering these objections and defenses, the Court first examines the scope of its limited ability to inquire into the purpose for which the Subject Property may be used after the taking.  First, the Court notes that "'[i]t is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area."[105] Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.[106] Furthermore, "[i]t is perfectly clear that the judicial role in examining condemnation cases does not extend to determining whether the land sought is actually necessary

---

[102] 8 U.S.C. § 1103(b)(1)–(3).
[103] *Id.*
[104] Dkt. No. 22.
[105] *United States v. 2,606.84 Acres of Land in Tarrant Cty., Tex.,* 432 F.2d 1286, 1289 (5th Cir. 1970).
[106] *Id.* ("Once Congress approved the [project,] the taking for any purpose associated with that project was an authorized purpose, and the landowner cannot be heard to complain that the condemnation was not necessary to the dam's construction or operation.") (citing *Shoemaker v. United States*, 147 U.S. 282, 298; *United States ex rel. Tennessee Valley Authority v. Welch*, 327 U.S. 546, 554; *United States v. Carmack*, 329 U.S. 230, 247; *Berman v. Parker*, 348 U.S. 26, 35–6).

for the operation of the project."[107] "The only exception to this rule would occur if the delegated official so overstepped his authority that no reasonable man could conclude that the land sought to be condemned had some association with the authorized project" and "[i]n such a case alone could the taking be considered arbitrary or capricious as those terms are used in condemnation proceedings."[108]

The Court considers first Defendant's argument that the United States failed to allege that it followed the appropriate appraisal process.[109] However, the United States is not required to include any such allegations in the pleadings.[110] Furthermore, the Fifth Circuit "deem[ed] the settled law to be that the purported bad faith exception to the rule of finality of the administrative estimate of just compensation does not exist."[111] The United States estimate of just compensation is merely an estimate.[112] "[I]n short, the courts have no jurisdiction to review the amount of estimated compensation, none to set aside or vacate a declaration of taking, none to refuse a declaration of possession on the grounds asserted here."[113] Thus Defendant's arguments here fail. Defendant will have an opportunity to present what they believe to be the value of the Subject Property and the United States will have to agree or disagree when the Court determines just compensation—unless the parties agree to an amount before that point.[114]

The Court next considers Defendant's argument that the government retaliated against her for her families' opposition to the border. In support of this, Defendant argues that "the government has filed very few lawsuits to condemn land for this stretch of proposed border

---

[107] *2,606.84 Acres*, 432 F.2d at 1290.
[108] *Id.*
[109] Dkt. No. 22 at 13, ¶ 35.
[110] *See* 71.1(c) and 40 USC § 3114.
[111] *In re United States*, 257 F.2d at 848.
[112] *Id.* at 849 (5th Cir. 1958) ("It should be noted that the deposit in no way affects substantial rights of landowners, and that the estimate in no way binds them as to just compensation, indeed has no bearing whatsoever on value."); *Chapman v. United States*, 169 F.2d 641 (10th Cir. 1948).
[113] *Id.*
[114] *Shoemaker*, 147 U.S. at 298.

wall."[115] However, the Cavazos's property is located along the U.S.-Mexico border, which is the area which the empowering statute designates for border wall takings.[116] Furthermore, the Cavazos spoke out against the Border Wall precisely because they own land along the border that has been taken for the same purpose as the Subject Property.[117] For these reasons, the Court does not find the taking of the Cavazos's land so far outside the bounds of the statutory purpose to rise to the level of arbitrary and capricious.[118]

Last, the Court considers Defendant's arguments that the United States is violating its treaty obligations and violating the Rehabilitation Act.[119] Both of these allegations have to do with the Department of Homeland Security's specific use of the land, and compliance with treaties and laws separate from the empowering statute in the development of the land, which is not a basis for dismissal of a condemnation action under DOTA.[120] The Court acknowledges that it has the "power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner" and accordingly, may require compliance with the separate statute and "withhold possession by the government or take appropriate injunctive action to enforce its order." However, here, the Court finds the United States alleged noncompliance with its treaty obligations and the Rehabilitation Act non-justiciable.[121] Such an inquiry would take the Court outside the role of the judiciary and impermissibly infringe on the discretion of the legislative and executive branches.[122] Furthermore, in regards to the Rehabilitation Act, given the broad purpose under the empowering

---

[115] Dkt. No. 22 at 20, ¶ 55.
[116] Dkt. No. 1-1 at 9–19; *see* 8 U.S.C. § 1103(b) & note.
[117] Dkt. No. 22 at 19, ¶ 51–52.
[118] *See 2,606.84 Acres*, *supra* 107–108.
[119] Dkt. No. 22 at 14–18.
[120] *See City of Detroit; 162.20 Acres; 1.16 Acres; Caitlin; Berman; 2,606.84 Acres; and 178.15 Acres*, *supra* notes 54–58.
[121] *See 2,606.84 Acres*, 432 F.2d at 1290 (holding that the Court may not use arbitrary and capricious determinate to turn an essentially legislative determination into a judicial question).
[122] *See City of Detroit; 162.20 Acres; 1.16 Acres; Caitlin; Berman; 2,606.84 Acres; and 178.15 Acres*, *supra* notes 54–58; *1.16 Acres*, 639 F.2d at 304 ("[O]nly an express statement by Congress that . . . noncompliance [with a non-empowering federal statute] is a defense to a condemnation itself would be sufficient to achieve that result.).

statute in this action, the Court finds inquiry into the exact details of the yet-to-be-decided development of the Subject Property outside the scope of this Court.[123] For these reasons, the Court declines to review whether the Department of Homeland Security's plans for the development of the Subject Property violate treaties or the Rehabilitation Act.

### iii. Bona Fide Negotiations

Defendant argues that "Plaintiff failed to allege compliance with the good faith negotiation requirements that are a prerequisite to taking land under [IIRIRA]."[124] On this basis, Defendant argues, Plaintiff failed to state a claim under 12(b)(6).[125] However, in setting forth this argument, Defendant fails to provide any authorities supporting the position that a failure to allege negotiation in the complaint may serve as a basis to dismiss a land condemnation action under DOTA.[126] The Court agrees that the United States is required to engage in bona fide negotiations and must, when ordered, provide sufficient evidence to the Court for it to determine that it engaged in such negotiations.[127] However, courts, in dealing with this issue, treat it as a prerequisite for possession, and never as a basis for dismissal.[128] Furthermore, "[i]t is sufficient that negotiations proceed far enough to indicate that an agreement is impossible, and, where it is apparent that the parties cannot agree on the amount to be paid, a formal effort to agree is not necessary."[129] Nevertheless, "a court may direct further negotiations as a condition precedent to

---

[123] *See 2,606.84 Acres*, *supra* 107–108.

[124] Dkt. No. 22 at 11, ¶ 29.

[125] *Id.*

[126] *Id.*

[127] *United States v. 1.04 Acres of Land, More or Less, Situate in Cameron Cnty.*, 538 F. Supp. 2d 995, 1012 (S.D. Tex. 2008).

[128] *Id.* (" The language of the consultation clause, especially in light of the savings provision, does not create an express statement that non-compliance with the consultation clause is a defense to this action at this stage."); *Tamez v. Chertoff*, 2009 WL 10693618, at *5 (S.D. Tex. Jan. 27, 2009) ("This Court previously held that . . . the Government may properly file a condemnation action before compliance with the negotiation provisions of 8 U.S.C. § 1103(b), but may not receive possession prior to compliance."); *United States v. 27.36 Acres of Land, More or Less*, No. 7:18-CV-338, ECF No. 21, slip op. at 5 (S.D. Tex. Dec. 12, 2018) ("[W]hile failure to follow consultation procedures may delay possession, non-compliance with any consultation requirements is a not a defense against the condemnation itself under the Declaration of Takings Act.").

[129] *Id.* (quoting *United States v. Certain Ints. in Prop. in Cascade Cty., Mont.*, 163 F. Supp. 518, 524 (D. Mont. 1958) (quoting *1011 29A C.J.S. Eminent Domain § 224)); *see Bajwa v. Sunoco, Inc.*, 329 F.Supp.2d 726, 732 (E.D.Va.2004); *Kerr v. Raney,* 305 F.Supp. 1152, 1156 (W.D.Ark.1969).; *see also USG Pipeline Co. v. 1.74 Acres*

condemnation if it finds the negotiations have, so far, been inadequate."[130] Furthermore, the Court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession" to the United States.[131]

In the United States' response, it argues that Defendant admitted there was an attempt at negotiation, citing Dkt. No. 22 at paragraph 27.[132] The United States is indeed correct. Therein, Defendant admits that "Plaintiff made some efforts to negotiate acquisition of the property interest sought; however, Defendants denies that Plaintiff made an adequate good faith effort in this endeavor."[133] Defendant provides no facts to support her claim that the efforts were not in good faith. The United States further alleges in its motion for immediate possession that "[f]rom January to June 2020, [it] negotiated the direct purchase of the Subject Property with all landowners identified in Schedule G of the Declaration of Taking."[134] Thus, it appears that the pre-suit agreement was impossible. Nothing more is required.

For these reasons, the Court **GRANTS** the United States' motion to strike Defendant's defenses and objections[135] and **DENIES** Defendant's motion to dismiss.[136]

## V.   MOTION FOR IMMEDIATE POSSESSION

Last, the Court considers the United States' motion for immediate possession[137] and Defendant's response.[138] In the United States' motion, it requests "an Order granting immediate

---

*in Marion County, Tenn.*, 1 F.Supp.2d 816, 824–25 (holding that making a monetary offer and demonstrating a desire to acquire easements by negotiation and settlement rather than by eminent domain to be more than sufficient to prove the condemnor made a bona fide effort); *Thornton Dev. Auth. v. Upah*, 640 F.Supp. 1071, 1075 (D.Colo.1986) (finding that the Government's offer and rejection of a counteroffer from the property owner qualified as a reasonable effort)).

[130] *1.04 Acres*, 538 F. Supp. 2d at 1011 (citing *County of Cascade*, 163 F.Supp. at 525).
[131] 40 U.S.C. § 3114(d)(1).
[132] Dkt. No. 36 at 8, ¶ 16.
[133] Dkt. No. 22 at 10, ¶ 27.
[134] Dkt. No. 47 at 5, ¶ 10.
[135] Dkt. No. 36.
[136] Dkt. No. 22.

possession of the condemned estate."[139] In support of this, the United States provides that "[a]cquiring this property is a necessary step in implementing the congressional directive, set forth in the Complaint and Declaration of Taking," and that it "plans to construct primary pedestrian levee fencing in Hidalgo County, Texas, and the identified tract in this case, RGV-MCS-2119, is a part of that designation."[140] The United States further provides that it is entitled to immediate possession because (1) it acquired title under the Declaration of Taking Act; (2) needs immediate possession in order "to meet the congressional directive to construct fencing in the Rio Grande Valley Sector;" and (3) immediate possession will not present any undue hardships to Defendants.[141] In response, Defendant argues "Plaintiff prematurely requests to immediately possess this land," because it "has not met basic conditions precedent such as (1) identifying and serving all parties; (2) justifying its urgent  need for the Cavazos's land; (3) engaging in bona fide negotiations; and (4) filing appropriate documentation."[142] Defendant further argues that the United States' plan for the subject property "impermissibly exceed its authority and are arbitrary and capricious."[143]

The Court already addressed many of Defendant's arguments—including the United States' compliance with statutory requirements, whether the taking was arbitrary and capricious, and whether the United States satisfied the negotiation requirements. For the same reasons outlined above, the Court rejects Defendant's argument that immediate possession should be delayed on these bases. Furthermore, the United States has served all interested parties in this case. Additionally, the United States cites contracts and construction activities that began well

---

[137] Dkt. No. 47.
[138] Dkt. No. 52.
[139] Dkt. No.  47 at 1. ¶ 1.
[140] *Id.* at 1–2, ¶ 1.
[141] Dkt. No. 47 at 2–6.
[142] Dkt. No. 52 at 1–2.
[143] *Id.* at 2.

before the initiation of this case as a basis for the urgency of possession in this case.[144] The Court finds this sufficient to support its assertion that it needs prompt possession of the Subject Property.[145] Finally, because the United States has served all parties, filed the appropriate documentation, and deposited estimated just compensation for the taking, the Court holds that the United States is entitled to immediate possession of the Subject Property.[146]

Accordingly, the Court **GRANTS** the United States' motion[147] and **ORDERS** all people or entities in possession or control of the Subject Property[148] to surrender possession or control of said property to the extent of the estate being condemned[149] to the United States, immediately.

### VI.   CONCLUSION AND HOLDING

For the foregoing reasons, the Court **DENIES** Defendant-Intervenor's motion to intervene.[150] The Court further **GRANTS** the United States' motion to strike.[151] Furthermore, the

Court **STRIKES** Defendant's defenses and objections,[152] **DENIES** Defendant's motion to dismiss,[153] and **GRANTS** the United States' motion for immediate possession.[154]

IT IS SO ORDERED.

---

[144] Dkt. No. 47 at 5, ¶¶ 6–9.
[145] *Id.*, ¶ 6.
[146] 40 U.S.C. § 3114(b)(1) ("On filing the declaration of taking and depositing in the court, to the use of the persons entitled to the compensation, the amount of the estimated compensation stated in the declaration, title to the estate or interest specified in the declaration vests in the Government."); *see Kirby Forest Indus. v. United States*, 467 U.S. 1, 5 (1984) ("Title and right to possession thereupon vest immediately in the United States."); *United States v. Miller*, 317 U.S. 369, 381 (1943) ("The purpose of the statute is . . . to give the Government immediate possession of the property . . . .").
[147] Dkt. No. 47.
[148] *See* Dkt. No. 1-1 at 5–16 (Schedules "C" & "D").
[149] *See id.* at 17–19 (Schedule "E").
[150] Dkt. No. 21.
[151] Dkt. No. 36.
[152] Dkt. No. 22.
[153] *Id*.
[154] Dkt. No. 47.

DONE at McAllen, Texas, this 12th day of April 2021.

_____
Micaela Alvarez
United States District Judge